FILED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS** 21 APR -5 PM 2:00
**AUSTIN DIVISION**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

JABIL INC.,

      Plaintiff,

v.

ESSENTIUM, INC.,

      Defendant.

Case No. 1:21MC0294 RP

---

**PLAINTIFF'S MOTION TO QUASH ESSENTIUM, INC.'S**
**SUBPOENA TO FARSOON AMERICAS CORP.**

In 2015, Plaintiff Jabil Inc. ("Jabil")—a manufacturing-services company—began developing a 3D printer known as "TenX." In the fall of 2017, after several employees involved with TenX left Jabil, the company continued its 3D printer work, but did so by modifying and further refining its 3D printer under the new name of "Roadrunner."

Unbeknownst to Jabil, the employees who left the company had been involved in a conspiracy with Defendant Essentium, Inc. ("Essentium") and its affiliates and representatives to steal Jabil's highly confidential designs, vendor relationships, and other trade secrets related to TenX and misappropriate them to replicate at Essentium. In fact, using Jabil's trade secrets and thousands of confidential files they stole related to **TenX**, these individuals swiftly built and began selling a competing line of high-speed extrusion ("HSE") 3D printers at Essentium.

As a result, Jabil, in June 2019, filed suit against Defendants[1]—in the Middle District of Florida—to prevent further misuse of its **TenX** technology and to obtain compensation for

---

[1] As used herein, "Defendants" refers to the Defendants in the underlying action. *See Jabil Inc. v. Essentium, Inc.*, No. 8:19-cv-01567-KKM-SPF (M.D. Fla.). A copy of Jabil's Second Amended Complaint is attached as Exhibit A.

Defendants' unjust enrichment. But Jabil has never once asserted an allegation that Defendants misappropriated Jabil's **Roadrunner** technology. Indeed, Defendants had already left Jabil before the company transitioned its 3D printing program from TenX to Roadrunner.

Since the outset of the underlying case, however, Defendants have sought broad discovery into Jabil's proprietary Roadrunner printer—a pre-market printer that will compete directly against Essentium's HSE printer. And, after extensive briefing and oral argument, the Middle District of Florida issued a Protective Order on February 8, 2021 (the "Protective Order") making clear what limited amount of Roadrunner information is discoverable. Specifically, the Court stated that "discovery regarding Jabil's proprietary Roadrunner program is limited to TenX technology and parts that are incorporated into the Roadrunner." (Protective Order, attached as Exhibit B, at 1.)

Since then, Essentium has served subpoenas on third parties across the country, including Farsoon Americas Corp. ("Farsoon"), purportedly in search of TenX information. However, Farsoon is completely unfamiliar with TenX, as Jabil did not explore a business relationship with Farsoon regarding its 3D printing program until **after** its transition from TenX to Roadrunner.

Given its unfamiliarity with TenX, Farsoon—upon reviewing the subpoena, which **only** references **TenX** (and not Roadrunner)—is likely to be immediately confused. Moreover, because of its unfamiliarity with TenX, Farsoon simply **does not have the ability** to determine whether the proprietary Roadrunner information that may be within its possession includes "TenX technology and parts that are incorporated into the Roadrunner program." (*Id.*) Thus, there is an overwhelming risk that Farsoon—to the extent it voluntarily or compulsorily produces documents—would inadvertently produce documents containing Jabil's trade secrets and other confidential information and documents that are expressly protected under the Protective Order.

Given these circumstances—and although Jabil maintains that the subpoena to Farsoon is improper and should be quashed in its entirety (for the reasons discussed below)—Jabil explained to Essentium that it would be willing to forego a motion to quash, so long as Essentium would agree that, to the extent Farsoon intended to produce documents in response to the subpoena, Farsoon would first produce the documents to Jabil, given it is uniquely situated to identify responsive documents. Upon receipt of the documents, Jabil would review them and provide all documents that are relevant, responsive, and non-privileged with an appropriate confidentiality designation, along with a log of any documents withheld on the basis of privilege—just as Jabil is obligated to do for the documents already within its possession.

Essentium, however, objected to this common sense and reasonable approach. Specifically, Essentium objected to Jabil reviewing the documents for responsiveness because Jabil has allegedly not provided "clarification" regarding what Roadrunner information is discoverable pursuant to the subpoena. But Jabil need not do so. The Middle District of Florida has already done so in stating that "discovery regarding Jabil's proprietary Roadrunner program is limited to TenX technology and parts that are incorporated into the Roadrunner program." (*Id.*) And Jabil has stated that it will treat documents that discuss technology or parts from TenX that are incorporated in Roadrunner as relevant and responsive Roadrunner information.

Simply put, Essentium's issue here is with the clear and limited nature of the Protective Order. Yet, rather than staying the compliance deadline for the subpoenas and seeking the "clarity" it supposedly needs from the Middle District of Florida (as also proposed by Jabil), Essentium has forced Jabil to institute this action to protect its confidential and proprietary information.

For these reasons and those explained more fully below, Jabil respectfully requests that the Court quash the subpoena to Farsoon in its entirety or—at minimum—modify the subpoena such that any documents produced by Farsoon are produced directly to Jabil for further review.

## BACKGROUND

### I.    Jabil's 3D Printing Program

In early 2015, Jabil began an additive manufacturing (i.e., 3D printing) program.   To develop this program—through a project known as "TenX"—Jabil made a number of external hires, including Greg Ojeda and Defendants Erik Gjovik, Terry MacNeish, Lars Uffhausen, Chad Eichele, and Jason Greene.

In or around the fall of 2017, Jabil decided to adjust its strategy for the TenX printer such that resources for the additive manufacturing program were temporarily streamlined and employees within the program were restructured.  However, Jabil did not abandon its 3D printing program.  To this day, Jabil continues to develop a 3D printer, the 3D printing program is referred to as "Roadrunner"—a change that was made in the fall of 2017 after Ojeda, Gjovik, MacNeish, Uffhausen, Eichele, and Greene left Jabil.

While Roadrunner does include certain technology and parts incorporated from TenX, Jabil has enhanced and developed the TenX technology and parts beyond what was previously used.

### II.    The Instant Suit

Unbeknownst to Jabil, at the time of its strategy shift in the fall of 2017, Ojeda, Gjovik, MacNeish, Uffhausen, Eichele, and Greene were in the midst of a conspiracy with Essentium, Inc., Essentium, Materials, Inc., Blake Teipel, Steven Birdwell, and Gene Birdwell to steal Jabil's highly confidential business plans, designs, vendor relationships, and other trade secrets and misappropriate them to replicate Jabil's TenX printer. (*See* Sec. Am. Compl. ¶ 3.)  Indeed, using

Jabil's trade secrets and thousands of confidential files related to TenX, these individuals swiftly built a competing line of high-speed extrusion ("HSE") 3D printers at Essentium. (*Id.* ¶¶ 72-73.)

In light of these circumstances, Jabil filed suit in the Middle District of Florida on June 19, 2019 to prevent further misuse of its technology and to obtain compensation for Defendants' unjust enrichment from the sale of HSE printers and associated materials.

## III.    Defendants' Quest for Broad Roadrunner Discovery

At no point during this suit—whether in pleadings or otherwise—has Jabil alleged that Defendants misappropriated highly confidential designs, vendor relationships, and other trade secrets specific to **Roadrunner**. (*See generally* Sec. Am. Compl.) Nevertheless, Essentium and the other Defendants have, from the outset, sought broad discovery into Roadrunner. And while Jabil attempted to negotiate with Defendants in good faith about the scope of their requests for Roadrunner information, Jabil was ultimately forced to file a Motion for Protective Order.

## IV.    The Protective Order

After a hearing on February 5, 2021, the Court, on February 8, 2021, entered a Protective Order (the "Protective Order") stating that "discovery regarding Jabil's proprietary Roadrunner program is limited to TenX technology and parts that are incorporated into the Roadrunner program"[2]—a ruling that was expected given the clear instruction at the February 5 hearing:

- The Court: I agree . . . and I'm not ruling yet, but I will give a little preview to the defendants, that it seems to me anyway that the discovery into what parts or what technology from TenX are incorporated into Roadrunner is relevant to claims and defenses in this lawsuit, but a full look at the current Roadrunner technology not only isn't relevant to any claim or defense in this case, but also might give an unfair advantage to a competitor . . . . February 5, 2021 Hearing Transcript[3] ("Tr.") 18:9–18.

- The Court: I understand your frustration, [Counsel for Essentium] . . . . But if they've created Roadrunner that is a unique -- either has a new technology added to it or is a

---

[2] Protective Order at 1.
[3] *See Jabil Inc. v. Essentium, Inc.*, No. 8:19-cv-01567-KKM-SPF (M.D. Fla.), Dkt. No. 194.

unique configuration of parts from the TenX technology, that very well could be a trade secret and I'm not going to allow a competitor to get that in discovery when it has no relevance to the issues in this case, the claims or defenses in this case. *Id.* 30:13–31:4.

- The Court: All right. . . . All that you are entitled to in discovery with respect to Roadrunner is what technology -- TenX technology is currently be [sic] used in Roadrunner. You can ask those questions. What technology -- TenX technology is currently being used in Roadrunner. . . . But I'm not going to allow you to seek discovery about Roadrunner about what their trade secret is with respect to Roadrunner and I'm not going to allow you to have discovery into a product that is not at issue in this case other than to the extent that the TenX technology has economic value that is currently being used in the Roadrunner technology. *Id.* 31:18–32:8.

## V.    The Subpoenas

On February 24 and March 1, 2021, following the issuance of the Protective Order which allowed only very limited discovery about **Roadrunner**, Essentium provided Jabil with notice of its intent to serve subpoenas on seven third parties—including Farsoon. On March 12, Essentium formally served Farsoon with the subpoena at issue here, which contains 11 broad document requests, which—according to Essentium—explicitly seek certain TenX documents but in fact implicitly seek Roadrunner documents. *See* Subpoenas to Produce Documents, Electronically Stored Information, or Tangible Things on Farsoon, attached hereto as Exhibit C. These third-party subpoenas were thus transparent attempts by Defendants to seek documents from third parties that that they know are not discoverable under the Protective Order.

Farsoon—like several of the other subpoenaed entities[4]—has no familiarity with TenX. Indeed, Jabil did not begin exploring a potential business relationship involving a Jabil-created 3D

---

[4] In response to Defendant Essentium Materials, LLC's Interrogatory No. 10—which seeks the identity of "any third parties with which Jabil has developed or entered into agreements of any kind concerning the use of any feature or component of its TenX printer"—Jabil stated that it entered into negotiations related to TenX with Hunan Farsoon High-Tech Co., among others. Jabil's statement herein that Farsoon was not involved in discussions regarding TenX, only Roadrunner—which includes features and components of its TenX printer—is consistent with its Response to Interrogatory No. 10.

printer with Farsoon until **after** Jabil had transitioned its 3D printing program from TenX to Roadrunner. (*See* Declaration of John Dulchinos, attached here to as Exhibit D, ¶¶ 9, 10, 15.)

## VI.    Conferral Efforts

After receiving the subpoenas, Jabil objected to them as overbroad, seeking irrelevant information, seeking information in violation of the Court's Protective Order, and seeking information likely already in Jabil's possession. Jabil also emphasized that a quash order was appropriate because the subpoenaed entities (like Farsoon) are not in a position to determine precisely which of the **Jabil** documents within their possession contain **Jabil's** trade secrets and other confidential information. Nor—as Jabil explained—are the subpoenaed entities in a position to distinguish between (i) TenX information; (ii) "TenX technology and parts that are incorporated into the Roadrunner program" (which is discoverable under the Protective Order); and (iii) other non-discoverable Roadrunner information)—particularly when five of the seven subpoenaed entities subpoenaed, including Farsoon, were only involved with Roadrunner.

As an effort at compromise, Jabil explained that it would not object to the subpoenaed entities' production of documents (to the extent they intended to comply with the subpoenas), so long as Essentium would agree that the subpoenaed entities would produce their documents directly to Jabil. At that point, Jabil would review the documents and provide all responsive, non-privileged documents with an appropriate confidentiality designation, along with a log of any documents withheld on privilege grounds—a common sense and reasonable approach given the risks at hand. And Jabil was willing to take on this (unnecessary) burden, despite the fact that Essentium can obtain responsive, non-protected TenX and Roadrunner information from **Jabil**.

While Essentium **agreed** that that the subpoenaed entities may find it difficult to distinguish between responsive TenX information and protected Roadrunner information,

Essentium pushed back on this approach, indicating that Jabil should provide further information regarding how, during its review, it would apply the Court's Protective Order. Jabil responded informing Essentium that, in accordance with the Protective Order, it would treat documents that discuss technology or parts from TenX that are incorporated in Roadrunner as relevant and responsive Roadrunner information that will be produced, and Jabil would treat any Roadrunner documents that do not discuss such technology and parts as protected, non-responsive information.

But this did not satisfy Essentium. Accordingly, despite the time and expense it expended in seeking the Protective Order, Jabil offered to engage in another round of briefing (by providing an expedited response to a Motion for Clarification to be filed by Essentium), so long as Essentium would temporarily stay the underlying subpoena compliance deadlines. But Essentium declined that offer as well. However, Jabil nevertheless tried again, reaching out to Essentium once more in an effort to avoid court intervention. In doing so, Jabil explained that what may be hindering the process is the fact that Defendants had not clearly asked Jabil (in any interrogatories) to identify the "TenX technology and parts that are incorporated into the Roadrunner program." Jabil also explained that Jabil would answer that interrogatory no later than March 30, so long as Essentium would extend the subpoena compliance dates through April 2, 2021.

Essentium accepted Jabil's offer, and Defendant Blake Teipel served Jabil with his Interrogatory No. 1. (*See* Exhibit E (emphasis added).) Jabil then served Essentium with its response—which, given the trade secret information included, was marked "Highly Confidential – Attorneys' Eyes Only"—on March 30, and the parties met and conferred on March 31.

During that conferral, Jabil explained that, if the subpoenaed entities intended to produce documents, Jabil would treat those documents that discuss the "TenX technology and parts that are incorporated into the Roadrunner program" identified in response to Teipel Interrogatory No.

1 as not protected. But, if those documents address further developments or enhancements to such technology and parts, Jabil would treat those documents as protected. *See* Tr. 30:13–31:4.

Essentium objected to this proposal, stating that Jabil should provide the **trade secret, attorneys' eyes only** information identified in response to Teipel Interrogatory No. 1 to the subpoenaed entities for their use in attempting to make relevancy, responsiveness, confidentiality, and privilege determinations in a case they know nothing about. For obvious reasons, Jabil declined this approach, leaving Jabil with no choice but to file the instant Motion and ensure that its protected trade secret and other confidential information is not inadvertently disclosed.

## LEGAL STANDARD

The court in the district where compliance is required **must** quash or modify a subpoena if it "requires disclosure of other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Similarly, to protect a person subject to or affected by a subpoena, the court is required may quash or modify the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Indeed, parties cannot use third-party subpoenas to "bypass" another party's review of their protected information before production. *See Solis v. Crescent Drilling & Prod.*, No. SA-19-CV-01194-FB, 2021 U.S. Dist. LEXIS 7259, at *11 (W.D. Tex. Jan. 14, 2021).

## ARGUMENT

As noted above, Farsoon may be in possession of Roadrunner documents—i.e., "trade secret or other confidential research, development, or commercial information." *See* Protective Order at 1; Tr. 30:13-31:4 (stating that the Roadrunner printer "could very well be a trade secret"); Fed. R. Civ. P. 45(d)(3)(B)(i). While some of those documents could potentially be responsive to the subpoena and not be protected from disclosure because they reflect or involve "TenX

technology and parts that are incorporated into the Roadrunner program," Farsoon—who was not involved with TenX—simply cannot make that determination. (*See* Dulchinos Decl. ¶¶ 9, 10, 20.)

Accordingly, there is an overwhelming risk that Farsoon—to the extent it voluntarily or compulsorily produces documents—would produce documents containing Jabil's trade secret or other confidential information. Because of that overwhelming and **unnecessary** risk, the only way in which Farsoon should be permitted to produce documents pursuant to the subpoena is by producing said documents to Jabil. At that point, Jabil would review the documents and provide all responsive, non-privileged documents with an appropriate confidentiality designation, along with a log of any documents withheld on the basis of privilege—just as Jabil is obligated to do for the documents already within its possession. *See Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.*, No. 1:05-CV-1309-RWS, 2005 WL 8155670, at *2 (N.D. Ga. June 2, 2005).

That said, Farsoon should not even be required to collect, review, and produce documents pursuant to the subpoena. This case is a case about **TenX**, and Farsoon had no involvement with or information on **TenX**. (*See* Dulchinos Decl. ¶¶ 9, 10, 20.) While Farsoon may be in possession of responsive Roadrunner documents, the likelihood that such documents—the overwhelming majority of which, if not all, would have been generated by Jabil, Roadrunner's creator—are not in Jabil's possession is exceedingly low and does not justify the time and expense Farsoon will incur collecting, reviewing, and producing those documents to Jabil. Nor would this likelihood justify the time and expense that Jabil would have to spend reviewing the documents produced by Farsoon—on the top of the time and expense that Jabil has already had to spend in discovery (to date, it has collected over **1.7 million** documents and produced more than **18,000** documents).

## CONCLUSION

For these reasons, Jabil respectfully requests that the Court quash the subject subpoena in its entirety or, at minimum, modify the subpoena such that any documents produced are produced directly to Jabil for purposes of a responsiveness, confidentiality, and privilege review.

Respectfully submitted this 5th day of April, 2021.

Jared M. Slade
Texas Bar No.: 24060618
ALSTON & BIRD, LLP
2200 Ross Avenue, Suite #2300
Dallas, Texas 75201
Telephone: (214) 922-3424
Facsimile: (214) 922-3884
jared.slade@alston.com

R. Joseph Burby, IV
*Pro Hac Vice Forthcoming*
Kristine McAlister Brown
*Pro Hac Vice Forthcoming*
David B. Carpenter
*Pro Hac Vice Forthcoming*
Amanda M. Waide
*Pro Hac Vice Forthcoming*
ALSTON & BIRD, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 253-8497
kristy.brown@alston.com
david.carpenter@alston.com
joey.burby@alston.com
amanda.waide@alston.com

*Attorneys for Plaintiff Jabil Inc.*

## LOCAL RULE CONFERRAL CERTIFICATION

Pursuant to Western District of Texas Local Rule CV-7(i), Jabil's counsel certifies that they have conferred in good faith with Defendant's counsel, who oppose the relief requested, and have been unable to resolve the matter by agreement.

Respectfully submitted this 5th day of April, 2021.

Jared M. Slade
Texas Bar No.: 24060618
ALSTON & BIRD, LLP
2200 Ross Avenue, Suite #2300
Dallas, Texas 75201
Telephone: (214) 922-3424
Facsimile: (214) 922-3884
jared.slade@alston.com

R. Joseph Burby, IV
*Pro Hac Vice Forthcoming*
Kristine McAlister Brown
*Pro Hac Vice Forthcoming*
David B. Carpenter
*Pro Hac Vice Forthcoming*
Amanda M. Waide
*Pro Hac Vice Forthcoming*
ALSTON & BIRD, LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 253-8497
kristy.brown@alston.com
david.carpenter@alston.com
joey.burby@alston.com
amanda.waide@alston.com

*Attorneys for Plaintiff Jabil Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on April 5, 2021, I caused copies of the foregoing to be served upon counsel for Defendant and counsel for the subpoena recipient via e-mail.

Steven C. Dupre
Kevin P. McCoy
D. Matthew Allen
Darnesha Carter
CARLTON FIELDS, P.A.
4221 W Boy Scout Blvd, Ste. 1000
Tampa, Florida 33607
sdupre@carltonfields.com
kmccoy@carltonfields.com
mallen@carltonfields.com
dcarter@carltonfields.com
*Attorneys for Defendant Essentium, Inc.*

Jaime Rocha
*Attorney for Farsoon Americas Corp.*

_____
Jared M. Slade